UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM C. POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:14-00373 |
| | ) | Judge Sharp |
| | ) | |
| LOWE'S HOME CENTERS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff William C. Powell was terminated from his employment with Lowe's Home Centers, LLC after he was observed urinating next to shopping carts located near the front entrance of the store where he worked. Defendant has filed a Motion for Summary Judgment (Docket No. 18), to which Plaintiff has responded in opposition (Docket No. 25), and Defendant has replied (Docket No. 28). Additionally, Plaintiff has also filed a Motion to Strike Declaration of Michael Limbert (Docket No. 27). For the reasons that follow, Defendants Motion will be granted while Plaintiff's Motion will be denied.

**I. Factual Background**

On February 6, 2008, Plaintiff was hired as an hourly employee to work at Lowe's Hendersonville, Tennessee store. In September 2011, he was transferred to a morning stocker job under Freight Flow Department Manager Tommy Huskey.

Morning stockers are responsible for stocking the inventory that is delivered to the store overnight. Those goods are stacked on pallets at the end of each aisle.

In performing their stocker duties, most employees use a handjack to roll the loaded pallet

1

to the middle of the aisle, open the boxes there, and place the items on the aisle's shelves. Plaintiff utilized a different approach. He left the loaded pallet at the end of the aisle, opened the boxes, put the merchandise from the boxes onto a board placed across a shopping cart, wheeled the cart down the aisle, and then lifted the merchandise from the cart and placed it on the shelf.

Huskey believed that Plaintiff could reduce the amount of times he had to bend over and pick up items if he would stop transferring his items to the cart before he put the items on the shelf. Regardless of the stocking method used, Plaintiff was required to bend over to retrieve the items from the pallet.

On several occasions, Huskey told Plaintiff that he was stocking the shelves too slowly.[1] Huskey also told Jada Martin, the store's Human Resource Manager, about Plaintiff's inability to stock shelves in a timely manner, and she told Huskey that he would have to contact the Assistant Store Manager if he wanted to write Plaintiff up.

Sometime around July 1, 2012, and several months into Plaintiff's employment as a morning stocker, he told Huskey that his back had been bothering him. Huskey checked with Human Resources to make sure Plaintiff did not have any work restrictions, and confirmed that Plaintiff did not have any restrictions at the time.

On June 26, 2012, Plaintiff was operating an order picker, stocking upper shelves more than 10 feet off the ground. He operated the cherry picker in that fashion without aisle blockers[2] at a time

---

[1] Plaintiff was scheduled to work 4 hours per day (20 hours per week), but could work more hours if he had not finished stocking. Thus, the longer Plaintiff took to perform stocking duties, the more hours he could work. (Pl. 149).

[2] As the name suggests, aisle blockers are intended to keep customers out of an aisle. A safety chain is dropped across the end of the aisle where the work is being performed and across the entrance to adjacent aisle(s).

when the store was open to customers. Plaintiff admitted that he did not use the aisle blockers, and apologized for failing to do so.

Failing to use blockers while operating an order picker at a height of more than eight feet while the store is open to the public is a Class A violation of Defendant's equipment policy for which an employee can be immediately terminated. Nevertheless, Plaintiff was issued a "Final Notice" or "poor job performance." (Id. Ex. 17). He was specifically warned that "any future violation of policy will result in additional corrective action, up to and including termination." (Id.).

Apparently around the same time that Plaintiff complained to Huskey about his back hurting, Plaintiff spoke with Martin and told her that the reason he used the shopping cart method and did not place items directly from the pallet onto the shelves was because of his back. Martin provided Plaintiff with an ADA Accommodation Request Form that requested medical information from his doctor.

On July 20, 2012, Plaintiff submitted the completed ADA form. On the form, Plaintiff indicated that he had to "avoid bending over at the waist and working for sustained periods," and that he needed "to stand upright as much as possible, such as working from a cart rather than a pallet." (Pf. Depo. Ex. 11). He also indicated that "it has become very difficult for me to perform the duties of morning stocker" and that "the stocking job is just too strenuous for my condition." (Id.).

In addition to the ADA form, Plaintiff submitted a note from his doctor that indicated Plaintiff suffered from herniated disks in his back. The note also explained that the "condition makes it very painful and difficult to work bending over at the waist or in low places for periods of time," and that Plaintiff "needs to work in an upright position as much as possible." (Id. Ex. 9).

On August 1, 2012, and in response to the submissions, Plaintiff was offered a position as cashier/telephone operator at a pay rate of $9.19 per hour. On the Interactive Process Form signed by both Plaintiff and Martin, Plaintiff "accept[ed] the provided accommodation," and wrote, "I appreciate the opportunity I have been given. I intend to do a good job and help in any way possible." (Id. Ex. 13).

The hourly rate for a cashier/telephone operator[3] was less than Plaintiff made as a morning stocker. However, it was equal to the rate paid other cashiers.

On the afternoon of November 15, 2012, as Martin was exiting the store, she saw Plaintiff urinating just outside the public entrance in the area where customers retrieve shopping carts.[4] In a statement, the Head Cashier on duty stated that Plaintiff had not indicated a needed to use the restroom at the time of the incident, had not requested a break for that purpose, and had never mentioned anything about having a condition that required the emergency use of a bathroom. Plaintiff admitted to, and apologized for, his public urination, explaining that he "was unable to retain his urine and had to urinate immediately." (Pf. Depo. Ex. 15).

Defendant decided that Plaintiff's actions created or contributed to unsanitary conditions for Lowe's customers and employees, in violation of its Code of Business Conduct and Ethics. Because he was already working under a Final Notice, Defendant terminated Plaintiff's employment on November 28, 2012.

## II. Motion to Strike

---

[3] Soon after Plaintiff accepted the accommodation, Lowe's eliminated the phone operator positions in most stores, including the Hendersonville store, but Plaintiff was allowed to remain in his cashier position.

[4] In a statement written that same day, Martin indicated that Plaintiff was urinating on the shopping carts. (Martin Dep. Ex. C).

4

Plaintiff moves to strike the declaration of Michael Limbert that Defendant filed in support of its Motion for Summary Judgment because Limbert was not identified in Defendant's initial disclosure or discovery responses. As an alternative, Plaintiff requests that discovery be reopened so that he can depose Limbert. In response, Defendant asserts that it was compelled to use Limbert as its custodian of records because Tammie Brown, who was listed in the initial disclosures, died during the pendency of this action.

Limbert is a Field Human Resources Director for Lowe's, and his declaration is primarily that of a custodian of records. Plaintiff complains about his declaration to the extent it is used to support paragraphs 15, 18 and 24 of Defendant's Statement of Undisputed Material Facts. The Court sees no need to strike the declaration, or to allow Plaintiff to conduct additional discovery.

In paragraph 15, Defendant states that "Plaintiff worked more actual hours, on average, after he was moved to the cashier position than he worked when he was a stocker," (Docket No. 20 at 4), but the Court finds it unnecessary to rely on this statement in resolving the Motion for Summary Judgment. In paragraph 18, Defendant states that "[t]he failure to use blockers while operating an order picker is a Class A violation of the Equipment Policy, for which an employee can be immediately terminated under the Discipline Policy" (id. at 5), but Plaintiff conceded both points in his deposition.[5] Finally, in paragraph 24, Defendant references a handwritten statement from the

---

[5] Plaintiff's deposition included the following exchange:
Q. Weren't the rules that if you were using a lift, you had to block off both aisles?
A. Correct.
Q. And not doing that is a Class A violation that could lead to termination?
A. Correct.
Q. Okay. And if it happens after 6 a.m., because there's a possibility for customers in the store, you have to use the aisle blockers; is that right?
A. Correct.
(Docket No. 21-1, Pf. Depo. at 142).

5

Head Cashier to the effect that Plaintiff did not ask for a restroom break or indicate that he had a condition requiring the emergency use of a restroom, but that cashier, Parminder Kahn, can testify as to her statement, and she was listed in Defendant's initial disclosures.

Accordingly, Plaintiff's Motion to Strike will be denied.

### III. Motion for Summary Judgment

#### A. Standard of Review

The standards governing summary judgment are well known. A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox Cnty. School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

#### B. Claims Not Specifically Pled

Plaintiff's Complaint is relatively short, but not a model of clarity. He begins by stating, "COMES NOW Plaintiff, by and through counsel, and alleges the following in this case against Defendant: Count One – Americans With Disabilities Act As Amended." (Docket No. 1 at 1). Immediately before his Prayer for Relief, Plaintiff sets forth "COUNT ONE VIOLATION OF AMERICANS WITH DISABILITIES ACT AS AMENDED." In between these bookends suggesting that this is strictly a case brought under the Americans With Disabilities Act ("ADA"),

6

42 U.S.C. § 12101 *et seq.*, however, Plaintiff references the Tennessee Disabilities Act ("TDA"), Tenn. Code Ann. § 8-50-103, makes a statement about a "hostile work environment," and alleges that "his discipline and termination were motivated by his disability and in retaliation for his complaints of hostile and unfair treatment by his supervisor." (Id. at 4 & 6).

To the extent Plaintiff is raising a claim under the TDA, " it is time-barred because the statute of limitations for bringing such an action is one year." Gleason v. Food City 654, 2015 WL 1815686, at *4 (E.D. Tenn. April 22, 2015) (citing Tenn. Code Ann. §§ 8–50–103(c)(2) & 4–21–311(d)); see Jenkins v. Trane U.S., Inc., 2013 WL 3272489, at *6 (M.D. Tenn. June 27, 2013) (stating that TDA incorporates the one-year limitations period found in the Tennessee Human Rights Act).[6] Untimeliness aside, any TDA claim fails for the reasons (as set forth below) that his ADA claims fails, see Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 553 n. 5 (6th Cir. 2008) (TDA and ADA "disability discrimination actions require the same analysis"), and also because "the TDA elements are very similar to those of the ADA but do not include a "reasonable accommodation" component," Bennett v. Nissan No. Am., Inc., 315 S.W.3d 832, 841-42 (Tenn. Ct. App. 2009).

Insofar as Plaintiff alleges a hostile work environment or retaliation, those claims fail because they were not mentioned in his Charge filed with the Equal Employment Opportunity Commission, nor could they be expected to arise out of any investigation of the Charge that was filed. See, Crowder v. Railcrew Xpress, 557 Fed. App'x 487, 492 (6th Cir. 2014) (citation omitted) ("'The general rule is that a plaintiff may file suit only in regard to the claims asserted in the EEOC

---

[6] Plaintiff was fired on November 28, 2012, but his Complaint was not filed until February 5, 2014.

charge and those within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'"). Moreover, Defendant moved for summary judgment on any purported hostile work environment or retaliation claims, and Plaintiff's failure to respond to those arguments warrants dismissal of the claims. See, Brown v. VHS of Mich., Inc., 545 Fed. App'x 368, 372 (6th Cir.2013) (collecting cases) (the Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment"); Hicks v. Concorde Career College, 449 Fed. App'x 484, 487 (6th Cir.2011) ("district court properly declined to consider the merits of [a] claim" where plaintiff "failed to address it in either his response to the summary judgment motion or his response to defendant's reply brief").

**C. ADA Claims**

The ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The plaintiff shoulders the initial burden of showing that he is disabled and "otherwise qualified" for the position, either without accommodation from the employer, with an alleged essential job requirement eliminated, or with a proposed reasonable accommodation." Turner v. City of Paris, 534 F. App'x 299, 302 (6th Cir. 2013) (citing, Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 869 (6th Cir. 2007)).

Here, Plaintiff appears to be asserting that Defendant engaged in disability discrimination and failed to provide a reasonable accommodation with respect to both his alleged incontinence and back problems.

*i. Disability Discrimination Claim*

Claims alleging discrimination under the ADA may be proven by either direct or circumstantial evidence. Mobley v. Miami Valley Hosp., 2015 WL 793510, at *3 (6th Cir. Feb. 25, 2015). These avenues of proof are mutually exclusive. Scheick v. Tecumseh Pub. Sch., 766 F.3d 523, 430 (6th Cir. 2014).

In the disability discrimination section of his response brief, Plaintiff argues that "[m]ost of the evidence in this case is actually *direct* evidence – action taken or not, and negative feelings deriving, [sic] directly in response to Plaintiff's request for accommodations due to his disability." (Docket No. 25 at 10, emphasis in original). Despite this broad assertion, he never identifies any direct evidence in this case.

Direct evidence is evidence that proves the existence of a fact without requiring any inferences." Rowan v. Lockeed Martin Energy Sys. Inc., 260 F.3d 544, 548 (6th Cir. 2004). That is, "'direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.'" Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 915 (6th Cir. 2013) (quoting, Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003)). Thus, by way of examples,

> courts have found that (1) a supervisor's alleged statement that she chose a particular candidate in order "to maintain racial balance" constituted direct evidence of discriminatory intent, Taylor v. Board of Educ. of Memphis City Schools, 240 Fed. Appx. 717, 720 (6th Cir. 2012); (2) a supervisor's alleged statement that an Italian-American probationary employee was a "dirty wop" and that there were too many "dirty wops" working at the facility constituted direct evidence of national origin discrimination, and the supervisor's alleged statement that a 46 year old employee was "no spring chicken" and he would never be a supervisor because of his age was direct evidence of age discrimination, DiCarlo v. Potter, 358 F.3d 408, 471 & 418 (6th Cir. 2004); and (3) providing an employee who intended to return from medical leave with a letter which stated that"given [that] you are unable to perform the tasks of your job, we have found it necessary to hire someone to fill the vacancy created

9

> by your need to take long term disability" and that "[d]ue to your long term disability we must terminate your employment" constituted direct evidence of disability discrimination under the ADA, Coffman v. Robert J. Young Co., Inc., 871 F. Supp.2d 703, 709 & 713 (M.D. Tenn. 2012).

Lovell v. Champion Car Wash, LLC, 969 F. Supp.2d 945, 951 (M.D. Tenn. 2013) (finding employers letter dismissing plaintiff because of his heart condition to be direct evidence). Plaintiff points to nothing of the sort in this case.

In the absence of direct evidence, discrimination claims under the ADA are analyzed under the burden shifting approach. "To make out a *prima facie case* of employment discrimination through indirect evidence under [the ADA], a plaintiff must show that '1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.'" Whitfield v. Tenn., 639 F.3d 253, 258-59 (6th Cir. 2011) (quoting, Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir. 2007)). "Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for its actions." Talley v. Family Dollar Stores of Ohio, Inc. , 542 F.3d 1099, 1105 (6th Cir. 2008) (quoting, Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir. 2001). "If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination." Id.

Insofar as his disability discrimination claim is based upon alleged incontinence, that fails at the prima facie stage because he has not shown that he was disabled within the meaning of the ADA. It also fails because he has not shown that Defendant was aware of the alleged disability.

Under the ADA, an individual is disabled if she has:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1).

In his response brief, Plaintiff points out that "major life activity means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, **learning, and working.**" (Docket No. 25 at 13, emphasis in original). By highlighting "learning and working," the Court takes this to mean that Plaintiff is relying on those two major life activities to support his claim, but he points to no evidence that his incontinence affected his ability to learn or to work.

A better fit is probably the impairment of a major bodily function under 42 U.S.C. § 12102(2)(b) which indicates that a major life activity includes "functions of the . . . bladder." Even so, Plaintiff has not shown that he was so impaired at the time of his termination.

The record reflects that in February 2010, Plaintiff was taking medicine for incontinence, urinated in a colorant bottle in the paint department where he was working,[7] and was placed on six months probation. The record further reflects that, in the fall of that year, Plaintiff underwent prostate surgery. However, the record also shows that Plaintiff reported to Defendant in March 2010 that his doctor had changed his medication and he was "cured," (Pf. Depo. Ex. 6), and Plaintiff

---

[7] Although the parties assert that Plaintiff urinated into a colorant bottle, Plaintiff's written statement given at the time of the events indicates that he urinated into a cup, poured the contents into a colorant bottle, and placed the colorant bottle on the shelf. He stated that he intended to throw the bottle away, but realized that he had "taken the wrong bottle and the original container was still on the shelf" after he left the store, apparently leaving it for someone else to discover. (Pf. Depo. Ex. 6).

admits that he never provided Defendant with a doctor's note which indicated that he needed extra bathroom breaks because of incontinence. Additionally, Plaintiff has identified no evidence suggesting that he suffered from incontinence between the time that he urinated into the colorant bottle and when he was caught urinating on or near the shopping carts.

As for the problems with his back, Plaintiff's case fails at the *prima facie* stage because he cannot show an adverse employment action. "An adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'" Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182 (6th Cir. 2004) ( Kocsis v. Multi–Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir.1996)). While Plaintiff received less pay in the cashier position, that transfer came about as an accommodation to Plaintiff's alleged disability, and was a transfer to which Plaintiff happily agreed.

The inability to establish a *prima facie* case aside, Defendant has presented legitimate, non-discriminatory reasons for its actions which Plaintiff has not shown to be pretextual. Plaintiff received a Final Warning for his admitted Class A safety violation and while under that warning was caught urinating near the front entrance of the store. That these facts presented just cause for termination cannot be seriously questioned. Thus, it falls on Plaintiff to show that the stated reasons for the adverse actions were a pretext for disability discrimination.

"Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." Romans v. Mich. Dep't of Human Servs., 668 F.3d 826, 839 (6th Cir. 2012) (quoting Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir.2009)). Pretext must be established a preponderance of the

evidence. See Wilson v. Cleveland Clinic Foundation, 567 Fed. App'x 392 (6th Cir. 2014) (quoting Tex. Dept. of Comm Affairs v. Burdine, 450 U.S. 248, 253 (1981) for the proposition that plaintiff must "show, by a 'preponderance of th evidence,' that the proffered explanations are mere pretext").

Plaintiff urinated on store grounds while on Final Notice for not using aisle blockers, and there is no evidence that Defendant did not truly believe that Plaintiff's admitted policy violations warranted his discharge. Moreover, Plaintiff has pointed to no other employees who suffered a lesser fate for the same or substantially similar conduct. If Defendant harbored a discriminatory animus toward Plaintiff, it likely would have terminated him after he was found to have urinated in the colorant bottle, or when he failed to use aisle blockers while using the cherry picker during open store hours.

"The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that he or she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." Brewer v. New ERA, Inc., 564 Fed. App'x 834, 840 (6th Cir. 2014). Plaintiff has not done so in this case and summary judgment will be granted on his disability discrimination claim.

### ii. Reasonable Accommodation Claim

As noted, the ADA prohibits discrimination because of disability against "a qualified individual with a disability." 42 U.S.C. § 12112(a). It also defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

"[C]laims premised upon an employer's failure to offer a reasonable accommodation

13

necessarily involve direct evidence (the failure to accommodate) of discrimination." Kleiber v. Honda of America Mfg., Inc., 485 F.3d 862, 868 (6th Cir. 2007). As a consequence, courts are required to analyze such claims utilizing the following framework:

> 1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

Kleiber, 485 F.3d at 869 (quoting Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452 (6th Cir. 2004).

Insofar as Plaintiff asserts that Defendant failed to accommodate his alleged incontinence, that claim fails because, as stated previously, Plaintiff has failed to establish that he had a disability recognized by the ADA or show that Defendant was aware of a covered disability. Regardless, that claim fails because he presents no evidence that he ever asked for a reasonable accommodation. See, Burdett-Foster v. Blue Cross Blue Shied of Mich., 574 Fed. App'x 672, 680 (6th Cir. 2014) (citation omitted) ("'The employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations'"); Tubs v. Formica Corp., 107 Fed. App'x 484, 488 (6th Cir. 2004) ("To establish a claim for failure to accommodate, [plaintiff] must also prove that she requested a reasonable accommodation").

In his response brief, while Plaintiff claims that "the restrooms at Lowes were in the back, about 300 feet away from the cashier stations at the front of the store, he admits that he "did not think to formally request extra breaks due to the now long distance to the restroom." (Docket No.

25 at 14). Plaintiff also admits he never provided Defendant with any doctor's notes about his need for bathroom breaks. Defendant cannot be held liable for failing to engage in an interactive process when it did not know that there was a need for that dialogue. See, Melange v. City of Center Line, 482 Fed. App'x 81, 85 (6th Cir. 2012) ("if the employee never requests an accommodation, the employer's duty to engage in the interactive process is never triggered"); Estades-Negroni v. Assoc. Corp. of No. Am., 377 F.3d 58, 64 (1st Cir. 2004) ("An employer need not provide accommodations where it does not know an employee has a disability").

Plaintiff's reasonable accommodation claim with respect to his back issues fails as well. He argues that he could have remained a morning stocker if he had been allowed to use his shopping cart approach, or perhaps been allowed to use a motorized cart. He does not dispute, however, that even those approaches required him to bend over and pick merchandise up off the pallet.[8] Moreover, at the time Defendant engaged in the interactive process with Plaintiff, it was faced with a doctor's note which indicated that it was extremely painful for Plaintiff to bend over and that it was best that he work in an upright position as much as possible. Defendant was also presented with Plaintiff's own statement that the stocker job was "just too strenuous" for his medical condition. Given these circumstances, and further given the fact that Plaintiff accepted and welcomed the change to the cashier position in writing, no reasonable jury could find that Defendant failed to engage in the required interactive process or failed to provide a reasonable accommodation.

## IV. Conclusion

On the basis of the foregoing, Defendant's Motion for Summary Judgment will be granted. Plaintiff's Motion to Strike will be denied.

---

[8] Actually, the additional steps utilized by Plaintiff may have required more bending and stooping.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE